# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50592-4-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| LEVAR DEMETRIUS COUCH, | |
| Appellant. | |

BJORGEN, J.  — Levar Demetrius Couch appeals his convictions based on guilty pleas for attempting to elude a pursuing police vehicle, driving while under the influence of alcohol, and second degree driving on a suspended license.

Couch's court-appointed appellate counsel has filed a motion to withdraw on the ground that there is no basis for a good faith argument on appeal.  She presents three potential issues that she claims would be frivolous:  (1) whether Couch made a knowing and intelligent guilty plea, (2) whether Couch was afforded his right to allocution, and (3) whether the trial court properly imposed discretionary legal financial obligations (LFOs).

We deny counsel's motion to withdraw and direct her to pursue Couch's appeal on the issue of whether the trial court inadequately inquired into his ability to pay discretionary LFOs under *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

FACTS

A.       Substantive Facts

Couch pled guilty to attempting to elude a pursuing police vehicle, driving while under the influence of alcohol (DUI), and second degree driving on a suspended license.  Couch signed

a statement of defendant on a plea of guilty. Counsel assisted Couch through his guilty plea and at his subsequent sentencing hearing.

The State recommended consecutive sentences for the negotiated plea, and the court informed Couch that it alone had the discretion to decide whether the sentences would be concurrent or consecutive. Couch affirmed that he understood it was within the court's authority to make this decision. The parties agreed that Couch's offender score on the eluding charge was 2 based on a prior DUI conviction plus the current DUI conviction. The court agreed to the plea recommendation and imposed consecutive sentences.

Before imposing discretionary LFOs, the court discussed with Couch his work history and education, establishing that at the time of his arrest Couch had been working at Nordstrom and that he had gone through the 12th grade in school. Based on this discussion, the court determined that Couch had the present and future ability to pay discretionary LFOs. The court then imposed two discretionary LFOs: a $500.00 court-appointed attorney fee and, for count II only, a $2,895.50 assessment. The court also ordered Couch to have an alcohol evaluation and placed him on bench probation.

Couch appeals his judgment and sentence.

B.     Motion to Withdraw

Couch's court-appointed appellate counsel filed a motion to withdraw, which includes a discussion of issues that potentially could be raised on appeal. The State filed a response agreeing that there are no nonfrivolous issues on appeal. Couch was served with both his counsel's motion to withdraw and the State's response. Couch did not file a statement of additional grounds.

ANALYSIS

I. MOTION TO WITHDRAW

Couch's court-appointed appellate counsel moves to withdraw on the grounds that there is no basis for a good faith argument on appeal. We disagree.

A.        Legal Principles

Under *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), appellate counsel for a criminal defendant is authorized to file a motion to withdraw if there are no nonfrivolous grounds that can be raised on appeal.

> "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."

*State v. Hairston*, 133 Wn.2d 534, 537-38, 946 P.2d 397 (1997) (emphasis omitted) (quoting *Anders*, 386 U.S. at 744). If we agree that the appeal is wholly frivolous, we will grant the motion to withdraw and dismiss the appeal. *See State v. Theobald*, 78 Wn.2d 184, 187, 470 P.2d 188 (1970).

RAP 18.3(a)(2) outlines the procedure for filing an *Anders* motion. The motion filed by the defendant's attorney must "identify the issues that could be argued if they had merit" with references to the record, and the motion and answer from the adverse party must be served on the person represented by counsel seeking to withdraw. RAP 18.3(a)(2).

B.    Motion Procedure

Couch's counsel followed the procedure required under *Anders* and under RAP 18.3(a)(2).  She filed a motion to withdraw with our court, which included a discussion of issues that potentially could be raised on appeal.  The State filed a response agreeing that there are no nonfrivolous issues on appeal.  Couch was served with his counsel's motion to withdraw and the State's response.  Couch did not file a statement of additional grounds.

With the procedural requirements being met, we next consider whether there are any nonfrivolous claims Couch could make on appeal.

C.    Analysis of Potential Appellate Issues

The material facts are accurately set forth in counsel's motion to withdraw.  Counsel identified the following potential issues on appeal:

1. Whether Couch made a knowing and intelligent guilty plea;
2. Whether the trial court afforded Couch his right to allocution;
3. Whether the trial court adequately inquired into Couch's ability to pay discretionary LFOs before imposing them.

Br. of Appellant at 2-5.

In considering these issues, we have reviewed counsel's motion and the State's response.  In addition, as required under *Anders*, we have independently reviewed the record to determine if there are other nonfrivolous issues that could be raised on appeal.

1. Knowing and Intelligent Guilty Plea

Counsel argues that Couch could potentially argue that he did not make a knowing and intelligent guilty plea.  We agree that doing so would be frivolous.

"Due process requires an affirmative showing that a defendant entered a guilty plea intelligently and voluntarily," with knowledge that certain rights will be waived.  *State v. Ross*,

4

129 Wn.2d 279, 284, 916 P.2d 405 (1996); *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). The trial court "shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances. *Branch*, 129 Wn.2d at 642. A defendant's signature on a plea statement is strong evidence of a plea's voluntariness. *Id.*

Couch told the court he understood the consequences of the guilty plea and signed the plea form. The trial court discussed with him the rights he was giving up, answered his questions, and confirmed that he understood what was happening and what the implications of his sentence would be, including confirming that he was making his plea knowingly, intelligently, and voluntarily. He has not moved to withdraw his plea.

We agree with Couch's counsel and the State that the facts of this case did not support an argument that Couch did not make a knowing and intelligent guilty plea. We accordingly hold that arguing to the contrary would be frivolous on appeal.

2. Right to Allocution

Counsel asserts that Couch could potentially argue that he was not afforded his right to allocution. We agree that doing so would be frivolous.

Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. *State v. Canfield*, 154 Wn.2d 698, 701, 116 P.3d 391 (2005). At sentencing, the trial court must allow argument from the defendant on the sentence to be imposed. RCW 9.94A.500(1).

At sentencing, before imposing the sentence, the trial court asked Couch if he had anything to say. Couch apologized for his actions, expressed his wishes to get alcohol treatment to do right by his family, and discussed his work and education history with the court.

Because the court gave Couch the opportunity to speak on his own behalf prior to sentencing, he was afforded his right to allocution. We hold that any argument to the contrary would be frivolous on appeal.

3. Discretionary LFOs

Counsel claims that Couch could potentially argue that the trial court did not adequately inquire into his ability to pay discretionary LFOs before imposing them. We think there is a legitimate, good faith argument to support this claim. Therefore, we deny counsel's request to withdraw with respect to this issue.

In sentencing, courts must impose mandatory LFOs, and may impose discretionary costs. RCW 9.94A.760; former RCW 10.01.160(1) (2011). In determining the amount and method of payment of costs, the sentencing court is required to take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. Former RCW 10.01.160(3). The sentencing court must conduct on the record an individualized inquiry into the defendant's present and future ability to pay before imposing discretionary costs. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). This inquiry requires the court to consider factors such as incarceration and a defendant's other debts, including restitution, when determining his ability to pay. *Id.* Trial courts should seek additional guidance from court rule GR 34, which lists the ways a person may prove indigent status for the purpose of seeking a

6

waiver of filing fees and surcharges. *Id.* If a defendant is indigent under GR 34, "courts should seriously question that person's ability to pay LFOs." *Id.* at 839.

After counsel filed her motion to withdraw, our Supreme Court clarified a heightened standard for *Blazina* inquiries. *Ramirez*, 191 Wn.2d 732. *Ramirez* noted that the financial statement section of a motion for indigency asks defendants questions relating to five categories: (1) employment history, (2) income, (3) assets and other financial resources, (4) monthly living expenses, and (5) other debts. *Id.* at 744. The court held that "[t]o satisfy *Blazina* and RCW 10.01.160(3)'s mandate that the State cannot collect costs from defendants who are unable to pay, the record must reflect that the trial court inquired into all five of these categories before deciding to impose discretionary costs." *Id.* The court also held that de novo review applies to an alleged failure by the trial court to make an adequate inquiry under *Blazina*. *Id.* at 742.

The trial court inquired into Couch's employment and education history, establishing that until his arrest he had worked for one and a half years in the women's shoes department at Nordstrom and that he had attended school through the 12th grade. It then made the following on-the-record assessment of Couch's ability to pay discretionary LFOs:

> At this point, since you're not doing a lot of time and since you do have work history and since you can make this up, I'm going to impose $200 court costs, $500 dollar crime victim penalty assessment, the DNA [(deoxyribonucleic acid)] sample, $500 reimbursement to DAC [(Department of Assigned Counsel)], the $2895.50 assessment, and the $124 for DUI recovery.

Verbatim Report of Proceedings (June 15, 2017) at 7.[1]

---

[1] The record is unclear as to whether the $2,895.50 assessment is a mandatory DUI fine or a discretionary assessment. However, it is clear that the DAC $500.00 court-appointed attorney fee was a discretionary LFO. Hence, regardless of whether the $2,895.50 assessment is a mandatory or discretionary LFO, there remains a nonfrivolous argument that the discretionary $500.00 fee was improperly imposed. Further, the lack of clarity in the nature of the $2,895.50

Although the trial court inquired into Couch's employment and education history, it made no inquiry into his debts or other "'important factors'" relating to his current and future ability to pay discretionary LFOs, such as his income, assets and other financial resources, and monthly living expenses. *Ramirez*, 191 Wn.2d at 735 (quoting *Blazina*, 182 Wn.2d at 838). Nor does the record reflect that the court inquired into whether Couch was indigent under GR 34, though Couch made no argument or showing that he is indigent.

Under *Ramirez*, Couch has a legitimate argument that the trial court did not adequately inquire into his ability to pay discretionary LFOs before imposing them. We hold that this argument would not be frivolous on appeal.

"If an appellate court 'concludes that there are nonfrivolous issues to be raised, it must appoint counsel to pursue the appeal and direct that counsel to prepare an advocate's brief before deciding the merits.'" *State v. Nichols*, 136 Wn.2d 859, 861, 968 P.2d 411 (1998) (quoting *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 444, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988). Having identified a nonfrivolous issue, we direct counsel to pursue Couch's appeal.

4. Other Nonfrivolous Issues

We have independently reviewed the record and could not identify any other nonfrivolous issues that could be raised on appeal.

---

assessment may serve as additional grounds for an argument that the court may have improperly imposed discretionary LFOs.

CONCLUSION

We deny counsel's motion to withdraw and direct her to pursue Couch's appeal on the issue of whether the trial court adequately inquired into his ability to pay discretionary LFOs under *Ramirez*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen. J.

We concur:

Johanson, P.J.

Sutton, J.