Filed
Washington State
Court of Appeals
Division Two

February 6, 2019

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50592-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| LEVAR DEMETRIUS COUCH, | |
| Appellant. | |

BJORGEN, J.P.T.[*] — Levar Demetrius Couch appeals his convictions based on guilty pleas for attempting to elude a pursuing police vehicle, driving while under the influence of alcohol, and second degree driving on a suspended license.

Couch's court-appointed appellate counsel has filed a motion to withdraw on the ground that there is no basis for a good faith argument on appeal. The motion presents three potential issues that counsel claims would be frivolous: (1) whether Couch made a knowing and intelligent guilty plea, (2) whether Couch was afforded his right to allocution, and (3) whether the trial court properly imposed discretionary legal financial obligations (LFOs). While this appeal was pending, the Washington Supreme Court issued its decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), which modified the standards governing the imposition of LFOs. Couch's appellate counsel then filed a supplemental brief arguing that under *Ramirez* the $200 criminal filing fee LFO was improperly imposed on Couch.

---

[*] Judge Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

We deny counsel's motion to withdraw and direct her to pursue Couch's appeal on the issues of whether the trial court adequately inquired into his ability to pay discretionary LFOs, whether the $200 criminal filing fee was validly imposed on Couch, and whether the interest accrual provision in Couch's judgment and sentence was validly imposed.

FACTS

A.      Substantive Facts

Couch pled guilty to attempting to elude a pursuing police vehicle, driving while under the influence of alcohol (DUI), and second degree driving on a suspended license. Couch signed a statement of defendant on a plea of guilty. Counsel assisted Couch through his guilty plea and at his subsequent sentencing hearing.

The State recommended consecutive sentences for the negotiated plea, and the court informed Couch that it alone had the discretion to decide whether the sentences would be concurrent or consecutive. Couch affirmed that he understood it was within the court's authority to make this decision. The parties agreed that Couch's offender score on the eluding charge was 2 based on a prior DUI conviction plus the current DUI conviction. The court agreed to the plea recommendation and imposed consecutive sentences.

Before imposing discretionary LFOs, the court discussed with Couch his work history and education, establishing that at the time of his arrest Couch had been working at Nordstrom and that he had gone through the 12th grade in school. Based on this discussion, the court determined that Couch had the present and future ability to pay discretionary LFOs. The court then imposed two discretionary LFOs: a $500.00 court-appointed attorney fee and, for count II

only, a $2,895.50 assessment. The court also imposed a number of other LFOs, among which

was a $200 criminal filing fee assessment. The judgment and sentence for count I also stated:

> The financial obligations imposed in this judgment shall bear interest from the date
> of the judgment until payment in full, at the rate applicable to civil judgments.
> RCW 10.82.090.

Clerk's Papers at 28. The court further ordered Couch to have an alcohol evaluation and placed

him on bench probation.

Couch appeals his judgment and sentence.

B.      Motion to Withdraw

Couch's court-appointed appellate counsel filed a motion to withdraw, which includes a

discussion of issues that potentially could be raised on appeal. The State filed a response

agreeing that there are no nonfrivolous issues on appeal. Couch was served with both his

counsel's motion to withdraw and the State's response. Couch did not file a statement of

additional grounds.

C.      Supplemental Briefing

After the decision in *Ramirez*, Couch's appellate attorney filed a motion for permission to

file a supplemental brief arguing that the $200 criminal filing fee LFO was not valid under

*Ramirez* and Laws of 2018, chapter 269, section 17. We granted the motion, accepted the brief,

and allowed the State to file a brief in response. The State agreed that because the trial court had

found Couch indigent, *Ramirez* and the 2018 legislation barred imposition of the criminal filing

fee. The State also noted in its briefing that the 2018 legislation eliminated the accrual of interest

on nonrestitution LFOs and stated that the interest accrual provision in Couch's judgment and

sentence should be stricken for that reason.

ANALYSIS

MOTION TO WITHDRAW

Couch's court-appointed appellate counsel moves to withdraw on the grounds that there is no basis for a good faith argument on appeal. We disagree.

A.      Legal Principles

Under *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), appellate counsel for a criminal defendant is authorized to file a motion to withdraw if there are no nonfrivolous grounds that can be raised on appeal.

> "[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."

*State v. Hairston*, 133 Wn.2d 534, 537-38, 946 P.2d 397 (1997) (emphasis omitted) (quoting *Anders*, 386 U.S. at 744). If we agree that the appeal is wholly frivolous, we will grant the motion to withdraw and dismiss the appeal. *See State v. Theobald*, 78 Wn.2d 184, 187, 470 P.2d 188 (1970).

RAP 18.3(a)(2) outlines the procedure for filing an *Anders* motion. The motion filed by the defendant's attorney must "identify the issues that could be argued if they had merit" with references to the record, and the motion and answer from the adverse party must be served on the person represented by counsel seeking to withdraw. RAP 18.3(a)(2).

B.      Motion Procedure

Couch's counsel followed the procedure required under *Anders* and under RAP

18.3(a)(2).  With the procedural requirements being met, we next consider whether there are any

nonfrivolous claims Couch could make on appeal.

C.      Analysis of Potential Appellate Issues

The material facts are accurately set forth in counsel's motion to withdraw.  The motion

identified the following potential issues on appeal:

> 1.  Whether Couch made a knowing and intelligent guilty plea;
> 2.  Whether the trial court afforded Couch his right to allocution;
> 3.  Whether the trial court adequately inquired into Couch's ability to pay discretionary LFOs before imposing them.

Br. of Appellant at 2-5.  In addition, Couch argues in his supplemental brief that the $200

criminal filing fee LFO is invalid under *Ramirez* and the 2018 legislation.  As noted, the State

agrees with that contention and takes the position that the interest accrual provision also runs

afoul of *Ramirez* and the 2018 legislation.

In considering these issues, we have reviewed counsel's motion, the State's response, and

the parties' supplemental briefing.  In addition, as required under *Anders*, we have independently

reviewed the record to determine if there are other nonfrivolous issues that could be raised on

appeal.  *See Anders*, 386 U.S. at 744.

1.  Knowing and Intelligent Guilty Plea

Counsel argues that Couch could potentially argue that he did not make a knowing and

intelligent guilty plea.  We agree that doing so would be frivolous.

"Due process requires an affirmative showing that a defendant entered a guilty plea

intelligently and voluntarily," with knowledge that certain rights will be waived.  *State v. Ross*,

129 Wn.2d 279, 284, 916 P.2d 405 (1996); *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). The trial court "shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances. *Branch*, 129 Wn.2d at 642. A defendant's signature on a plea statement is strong evidence of a plea's voluntariness. *Id.*

Couch told the court he understood the consequences of the guilty plea and signed the plea form. The trial court discussed with him the rights he was giving up, answered his questions, and confirmed that he understood what was happening and what the implications of his sentence would be, including confirming that he was making his plea knowingly, intelligently, and voluntarily. He has not moved to withdraw his plea.

We agree with Couch's counsel and the State that the facts of this case did not support an argument that Couch did not make a knowing and intelligent guilty plea. We accordingly hold that arguing to the contrary would be frivolous.

2. Right to Allocution

Counsel asserts that Couch could potentially argue that he was not afforded his right to allocution. We agree that doing so would be frivolous.

Allocution is the right of a criminal defendant to make a personal argument or statement to the court before the pronouncement of sentence. *State v. Canfield*, 154 Wn.2d 698, 701, 116 P.3d 391 (2005). At sentencing, the trial court must allow argument from the defendant on the sentence to be imposed. RCW 9.94A.500(1).

At sentencing, before imposing the sentence, the trial court asked Couch if he had anything to say. Couch apologized for his actions, expressed his wishes to get alcohol treatment to do right by his family, and discussed his work and education history with the court.

Because the court gave Couch the opportunity to speak on his own behalf prior to sentencing, he was afforded his right to allocution. We hold that any argument to the contrary would be frivolous on appeal.

3. Discretionary LFOs

Counsel claims that Couch could potentially argue that the trial court did not adequately inquire into his ability to pay discretionary LFOs before imposing them. We think there is a legitimate, good faith argument to support this claim. Therefore, we deny counsel's request to withdraw with respect to this issue.

In sentencing, courts must impose mandatory LFOs, and may impose discretionary costs. RCW 9.94A.760; former RCW 10.01.160(1) (2011). In determining the amount and method of payment of costs, the sentencing court is required to take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. Former RCW 10.01.160(3). The sentencing court must conduct on the record an individualized inquiry into the defendant's present and future ability to pay before imposing discretionary costs. *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). This inquiry requires the court to consider factors such as incarceration and a defendant's other debts, including restitution, when determining his ability to pay. *Id.* Trial courts should seek additional guidance from court rule GR 34, which lists the ways a person may prove indigent status for the purpose of seeking a

waiver of filing fees and surcharges. *Id.* If a defendant is indigent under GR 34, "courts should seriously question that person's ability to pay LFOs." *Id.* at 839.

After counsel filed her motion to withdraw, our Supreme Court clarified a heightened standard for *Blazina* inquiries. *Ramirez*, 191 Wn.2d 732. *Ramirez* noted that the financial statement section of a motion for indigency asks defendants questions relating to five categories: (1) employment history, (2) income, (3) assets and other financial resources, (4) monthly living expenses, and (5) other debts. *Id.* at 744. The court held that "[t]o satisfy *Blazina* and RCW 10.01.160(3)'s mandate that the State cannot collect costs from defendants who are unable to pay, the record must reflect that the trial court inquired into all five of these categories before deciding to impose discretionary costs." *Id.* The court also held that de novo review applies to an alleged failure by the trial court to make an adequate inquiry under *Blazina*. *Id.* at 742.

The trial court inquired into Couch's employment and education history, establishing that until his arrest he had worked for one and a half years in the women's shoes department at Nordstrom and that he had attended school through the 12th grade. It then made the following on-the-record assessment of Couch's ability to pay discretionary LFOs:

> At this point, since you're not doing a lot of time and since you do have work history and since you can make this up, I'm going to impose $200 court costs, $500 dollar crime victim penalty assessment, the DNA [(deoxyribonucleic acid)] sample, $500 reimbursement to DAC [(Department of Assigned Counsel)], the $2895.50 assessment, and the $124 for DUI recovery.

Verbatim Report of Proceedings (June 15, 2017) at 7.[1]

_____

[1] The record is unclear as to whether the $2,895.50 assessment is a mandatory DUI fine or a discretionary assessment. However, it is clear that the DAC $500.00 court-appointed attorney fee was a discretionary LFO. Hence, regardless of whether the $2,895.50 assessment is a mandatory or discretionary LFO, there remains a nonfrivolous argument that the discretionary $500.00 fee was improperly imposed. Further, the lack of clarity in the nature of the $2,895.50

Although the trial court inquired into Couch's employment and education history, it made no inquiry into his debts or other "'important factors'" relating to his current and future ability to pay discretionary LFOs, such as his income, assets and other financial resources, and monthly living expenses. *Ramirez*, 191 Wn.2d at 735 (quoting *Blazina*, 182 Wn.2d at 838). Nor does the record reflect that the court inquired into whether Couch was indigent under GR 34, though Couch made no argument or showing that he is indigent.

Under *Ramirez*, Couch has a legitimate argument that the trial court did not adequately inquire into his ability to pay discretionary LFOs before imposing them. We hold that this argument would not be frivolous on appeal.

4. The Criminal Filing Fee

Both Couch's appellate counsel and the State take the position that the criminal filing fee may not be imposed on indigent defendants such as Couch. This issue is presented in the context of appellate counsel's motion to withdraw. Therefore, under *Anders* and *Hairston*, both *supra*, we examine whether a challenge by Couch to the criminal filing fee LFO would be frivolous.

*Ramirez* applied the 2018 legislation to cases that were not yet final when the legislation was enacted, even though sentencing occurred before enactment. *Ramirez*, 191 Wn.2d at 749. The present appeal is such a case. The 2018 legislation prohibits assessment of the $200 criminal filing fee against those who are indigent under RCW 10.101.010(3)(a) through (c). LAWS OF 2018, ch. 269, § 17. The trial court found Couch to be indigent for purposes of seeking review at public expense.

---

assessment may serve as additional grounds for an argument that the court may have improperly imposed discretionary LFOs.

Therefore, Couch has a legitimate argument that the trial court improperly imposed the $200 criminal filing fee LFO on him. This argument would not be frivolous on appeal.

5. The Interest Accrual Provision

This issue was not raised in either the motion to withdraw or Couch's supplemental brief. However, we are required under *Anders* to independently review the record to determine if there are other nonfrivolous issues that could be raised on appeal. *Anders*, 386 U.S. at 744. We agree with the State that a challenge to the interest accrual provision would not be frivolous.

As noted, the judgment and sentence for count I stated that financial obligations imposed by it shall bear interest from the date of the judgment until payment in full at the rate applicable to civil judgments. CP 28. Section 5(b) of the 2018 legislation states that as of its effective date "penalties, fines, bail forfeitures, fees, and costs imposed against a defendant in a criminal proceeding shall not accrue interest." LAWS OF 2018, ch. 269, § 5(b).

Therefore, Couch has a legitimate argument that the interest accrual provision in his judgment and sentence conflicts with the 2018 legislation. This argument would not be frivolous on appeal.

6. Other Nonfrivolous Issues

We have independently reviewed the record and could not identify any other nonfrivolous issues that could be raised on appeal.

## CONCLUSION

If an appellate court "'concludes that there are nonfrivolous issues to be raised, it must appoint counsel to pursue the appeal and direct that counsel prepare an advocate's brief before deciding the merits.'" *State v. Nichols*, 136 Wn.2d 859, 861, 968 P.2d 411 (1998) (quoting

No. 50592-4-II

*McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 444, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988)).  In this opinion we identify three nonfrivolous issues that can be raised in Couch's appeal:  whether the trial court adequately inquired into his ability to pay discretionary LFOs, whether the $200 criminal filing fee LFO was validly imposed on Couch, and whether the interest accrual provision in Couch's judgment and sentence was validly imposed.  Therefore, we deny counsel's motion to withdraw and direct her to pursue Couch's appeal on these issues, including preparation of advocate's briefs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.P.T.

We concur:

Johanson, P.J.

Sutton, J.

11